**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

**AUTO-OWNERS INSURANCE COMPANY,**

*Plaintiff,*

**v.**

**MIKE KENDRICK and DAMARIO WILLIAMS**

*Defendants.*

**CIVIL ACTION NO.
5:25-cv-00282-TES**

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

In its Motion for Summary Judgment [Doc. 17-1, p. 1], Plaintiff Auto-Owners Insurance Company ("Plaintiff" or "Auto-Owners") contends that no liability coverage is available to Plaintiff Mike Kendrick under the Auto-Owners policy and that Auto-Owners has no duty to defend or indemnify Kendrick in connection with the underlying lawsuit. As discussed in more detail below, the Court agrees and **GRANTS** Plaintiff's Motion for Summary Judgment.

**BACKGROUND**

This case presents an uncommon posturing. Here, Plaintiff Auto-Owners Insurance Company and Defendant Damario Williams, the only remaining[1] defendant,

[1] The Court entered a Default Judgment against Defendant Kendrick on August 26, 2025. [Doc. 11].

have filed a Stipulated Local Rule 56 Statement of Facts as to Which There is No Genuine Issue to be Tried where the parties have agreed to a wide range of factual allegations for the Court to consider. *See* [Doc. 19]. The following facts are those which the parties have stipulated and are not in dispute for purposes of this case.

Damario Williams filed a lawsuit against Club Xavier LLC, Mike Kendrick, and others in the State Court of Bibb County, Georgia styled as Civil Action No. 20-SCCV-091599. [Doc. 19, ¶ 2]. The underlying lawsuit arises out of an alleged incident at Club Xavier a/k/a The Gold Room at Club Xavier, located at 4740 Pio Nono Avenue, Macon, Bibb County, Georgia. [*Id.*]. Auto-Owners issued a policy of commercial general liability coverage to Kasulka Properties LLP ("Kasulka") with liability coverage limits of $500,000.00 per occurrence. [*Id.* at ¶ 1].

The Auto-Owners policy at issue includes the following definitions of terms used in the policy:

> **SECTION V — DEFINITIONS**
>
> 3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
>
> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> 16. "Personal and advertising injury" means injury, including consequential "bodily injury" arising out of one or more of the following offenses:
>
> a. False arrest, detention or imprisonment;
>
> b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication, in any manner, of material that violates a person's right of privacy.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or 'Personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

[*Id.* at ¶ 3].

The Auto-Owners policy issued to Defendant Kasulka includes the following coverages:

**SECTION 1 — COVERAGES**

**COVERAGE A — BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III -Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages A and B.

b. This insurance applies to "bodily injury" and 'property damage" only if:

(1) The "bodily injury" or 'property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or 'property damage"

occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II — Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or 'Property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or 'property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph I. of Section II — Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or 'property damage" after the end of the policy period.

d. "Bodily injury" or 'Property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph I. of Section II Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or 'property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or 'property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**SECTION II - WHO IS AN INSURED**

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insured's, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insured's, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insured's, but only with respect to the conduct of your business. Your managers are insured's, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insured's, but only with respect to their duties as your officers or directors. Your stockholders are also insured's, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insured's, but only with respect to their duties as trustees.

[*Id.* at ¶ 4].

At the time of the incident, Kendrick was not acting within the course and scope of his employment as a bouncer/security guard at the nightclub located at 4740 Pio Nono Avenue, Macon, Bibb County, Georgia.[2] [*Id.* at ¶ 5]. The conduct alleged against Defendant Kendrick by Defendant Demario Williams is not covered by the Auto-

[2] In Plaintiff's Complaint, Plaintiff alleges that Defendant Kendrick *was* acting within the course and scope of his employment as a bouncer/security guard with Club Xavier. *See* [Doc. 1 at ¶ 13]. In the parties' Stipulated Statement of Facts, the parties agree that Defendant Kendrick *was not* acting within the course and scope of his employment as a bouncer/security guard at the nightclub. *See* [Doc. 19 at ¶ 5]. Generally, the parties' joint stipulation supersedes prior pleadings when there is a conflict between them. *See Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. Of the L. v. Martinez*, 561 U.S. 661, 678 (2010). In this case, however, it is immaterial whether Defendant Kendrick was acting in the scope of his employment. The parties have agreed that the conduct alleged against Defendant Kendrick is not covered by the Auto-Owners policy because Defendant Kendrick does not meet the definition of an insured and is not covered based on Exclusions A and C.

Owners policy because Defendant Kendrick does not meet the definition of an insured under the policy. [*Id.* at ¶ 6]. The Auto-Owners policy issued to Defendant Kasulka includes the following exclusions:

2. Exclusions

This insurance does not apply to:

a. Expected or intended Injury

“Bodily injury or “property damage ” expected or intended from the standpoint of the insured. This exclusion does not apply to “bodily injury” resulting from the use of reasonable force to protect persons or property.

c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

(a) The supervision, hiring, employment, training or monitoring of others by that insured; or

(b) Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol; if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph (I), (2) or (3) above. However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises,

> for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.
>
> Thus, there are questions that give rise concern Bodily Injury expected or intended and arising out of any liquor liability exclusions stated in the above paragraph.

[*Id.* at ¶ 7].

Defendant Kendrick intentionally slammed Defendant Williams headfirst into a solid structure, rendering him a quadriplegic. [*Id.* at ¶ 8]. Defendant Kendrick intentionally continued to assault and kick Defendant Williams as he lay motionless on the ground until he was eventually stopped by other bouncers/security guards in the nightclub. [*Id.* at ¶ 9]. The conduct alleged against Defendant Kendrick by Defendant Williams is not covered by the Auto-Owners policy based on Exclusion A because the injury by Defendant Kendrick was expected or intended. [*Id.* at ¶ 10]. The conduct alleged against Defendant Kendrick by Defendant Williams is not covered by the Auto-Owners policy based on Exclusion C because the incident arises from wrongdoing in the supervision, training, and monitoring of others, and/or conduct related to the furnishing of alcoholic beverages. [*Id.* at ¶ 11].

## LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on

the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party bears the initial responsibility of informing the court of the basis for its motion." *Four Parcels*, 941 F.2d at 1437. The movant may cite to particular parts of materials in the record, including, "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); Fed. R. Civ. P. 56(c)(1)(A).[3] "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim[]' in order to discharge this 'initial responsibility.'" *Four Parcels*, 941 F.2d at 1437–38 (quoting *Celotex*, 477 U.S. at 323). Rather, "the moving party simply may show—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* (quoting *Celotex*, 477 U.S. at 324) (cleaned up). Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.*

[3] Courts may consider all materials in the record, not just those cited by the parties. Fed. R. Civ. P. 56(c)(3).

If this initial burden is satisfied, the burden then shifts to the nonmoving party, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324). The nonmoving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable or[] is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249–50). "A mere scintilla of evidence supporting the [nonmoving] party's position will not suffice." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

Further, where a party fails to address another party's assertion of fact as required by Federal Rule of Civil Procedure 56(c), the Court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2); *see also* n.2, *supra*. However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. Succinctly put,

> [s]ummary judgment is not a time for fact-finding; that task is reserved for trial. Rather, on summary judgment, the district court must accept as fact all allegations the [nonmoving] party makes, provided they are sufficiently supported by evidence of record. So[,] when competing narratives emerge on key events, courts are not at liberty to pick which side they think is more credible. Indeed, if "the only issue is one of credibility," the issue is factual, and a court cannot grant summary judgment.

*Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020) (internal citations omitted).

"[T]he judge's function is not himself to weigh the evidence and determine the

truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The nonmovant's evidence is to be believed, and "all justifiable inferences are to be drawn in his favor." *Id.* at 255. "[I]f a reasonable jury could make more than one inference from the facts, and one of those permissible inferences creates a genuine issue of material fact, a court cannot grant summary judgment." *Sconiers*, 946 F.3d at 1263.

**DISCUSSION**

As indicated above, the parties have agreed to the facts that control the outcome of this case. The basis of Plaintiff's Complaint [Doc. 1] is that "[t]he conduct alleged against [D]efendant Kendrick by [D]efendant [Damario] Williams is not covered by the Auto-Owners policy based . . . on Exclusions a and c. . ." [Doc. 1, p. 13]. If, as Plaintiff alleges, Defendant Williams is not covered under the Auto-Owners policy based on Exclusions A and C, then "Auto-Owners does not afford any liability coverage for any claims asserted in the underlying lawsuit and does not afford any coverage to pay all or part of any judgment rendered in favor of [Defendant Damario Williams]" and, furthermore, that Auto-Owners "has no duty to [Defendant Damario Williams] in the underlying lawsuit." [*Id.* at p. 13]. In Plaintiffs' Motion for Summary Judgment, Plaintiff reiterates that "no liability coverage is available to Kendrick under the Auto-Owners policy and that Auto-Owners has no duty to defend or indemnify Kendrick in connection with the underlying lawsuit." [Doc. 17-1, p. 3].

And, as already noted, the parties have stipulated that "[t]he conduct alleged against Defendant Kendrick by Defendant Williams is not covered by the Auto-Owners policy based on Exclusion A because the injury by Defendant Kendrick was expected or intended" and "based on Exclusion C because the incident arises from wrongdoing in the supervision, training, and monitoring of others, and/or conduct related to the furnishing of alcoholic beverages." [Doc. 19 at ¶¶ 10, 11]. Additionally, the parties have agreed that "[t]he conduct alleged against Defendant Kendrick by Defendant Demario Williams is not covered by the Auto-Owners policy because Defendant Kendrick does not meet the definition of an insured under the policy." [*Id.* at ¶ 6].

Accordingly, there is no remaining factual dispute at issue in this case. In addition, there is no legal issue for the Court to decide. Given that the parties agree that Defendant Williams is not covered under the Auto-Owners policy, there exists no genuine issue of material fact as to the controlling coverage issues and summary judgment is appropriate. The Court finds that Defendant Kendrick does not meet the definition of an insured under the policy and that the conduct alleged against Defendant Kendrick by Defendant Williams is not covered by the Auto-Owners policy based on both Exclusion A and Exclusion C.

## CONCLUSION

Accordingly, the Court **GRANTS** Plaintiff's Motion for Summary Judgment [Doc. 17]. The Court **DIRECTS** the Clerk of Court to **ENTER** Judgment in favor of

Plaintiff and **CLOSE** this case.

**SO ORDERED**, this 11th day of August, 2026.

S/ *Tilman E. Self, III*
**TILMAN E. SELF, III**
**UNITED STATES DISTRICT JUDGE**